UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

LOUIS HORNICK & CO., INC.,                                          :

                          Plaintiff,             :       12cv5892 (VSB) (DCF)

        -against-                                                        :       **REPORT AND**
                                                                     **RECOMMENDATION**

DARBYCO, INC.; DARBYCO, LLC; and HOME       :
FABRIC FINISHING, INC.,
                                                                   :

                      Defendants.
                                                                   :
------------------------------------------------------------------------X

**TO THE HONORABLE VERNON S. BRODERICK, U.S.D.J.:**

       Currently before me is a reference to conduct a damages inquest and to issue a report and recommendation concerning the damages to be awarded in favor of plaintiff Louis Hornick & Co., Inc., ("Plaintiff"), against defendants Darbyco, Inc., Darbyco, LLC, and Home Fabric Finishing, Inc. (collectively, "Defendants"), following Defendants' default on Plaintiff's breach of contract, breach of warranty, and conversion claims. (*See* Dkt. 91.)

       After careful review of Plaintiff's submissions on this damages inquest, and as discussed in detail below, this Court concludes that, while Plaintiff claims to have been substantially injured by Defendants' conduct – and, indeed, seeks nearly $1 million in damages for its injury – Plaintiff's submissions are best characterized as a hodge-podge of documents, largely inscrutable and wholly unexplained, which present dollar figures that neither match nor obviously add up to *any* of the financial losses claimed. Moreover, although this Court described the inadequacy of Plaintiff's submissions in a prior Order, by which it specifically directed Plaintiff to supplement its inquest submissions so as to show the bases for its damages calculations (and expressly warned Plaintiff of the potential consequences of failing to meet its burden in this regard),

Plaintiff has failed to comply with this Court's directives.  In these circumstances, this Court cannot conclude that Plaintiff has established its claimed damages with reasonable certainty or that, at this point, there is any justifiable basis for its failure to do so.  Thus, even recognizing that, upon a proper showing, or a proper explanation of its presented evidence, Plaintiff might have been able to demonstrate entitlement to a significant monetary award against Defendants, I nonetheless recommend that Plaintiff not be awarded any damages on the default judgment issued by the Court.

## BACKGROUND

### A.     Factual Background

Based on the well-pleaded allegations of the Complaint (Dkt. 1), which, in light of Defendants' default, are deemed to be true, *see, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009), Plaintiff, a manufacturer and seller of window treatments, entered into a contract with Defendants under which Plaintiff was to provide Defendants with certain fabric, and Defendants were then to bond a thermal coating to the back of that fabric and return the coated fabric to Plaintiff for use in manufacture.  (Complaint, dated August 12, 2012 ("Compl.") ¶¶ 9-11 (Dkt. 1).)  Plaintiff contends that Defendants' work was defective and that, although Plaintiff tried to use the coated fabric that Defendants produced, Plaintiff's customers were not satisfied with its poor quality, leading to a large number of product returns, harm to Plaintiff's reputation, and Plaintiff's forced discontinuance of certain product lines.  (*See generally, id.*)  Plaintiff further contends that Defendants failed to return approximately 4,000 yards of fabric that had been provided by Plaintiff.  (*Id.* ¶ 36.)

B.       **Procedural History**

On August 12, 2012, Plaintiff filed its Complaint, asserting claims against Defendants for breach of contract, breach of warranty, and conversion.[1]  (Dkt. 1.)  Defendants, who were then represented by counsel, answered the Complaint on August 29, 2012 (Dkt. 17), and filed a motion to dismiss on January 4, 2013 (Dkt. 24).[2]  On February 26, 2013, the Court granted defense counsel's motion to withdraw from this action, and stayed the case to allow Defendants time to find new counsel, cautioning Defendants that they could find themselves facing a default motion if no attorney undertook their representation.  (Dkt. 34.)  Subsequently, on five separate occasions, the Court informed Defendants that, as corporate entities, they could not proceed in this action *pro se*, and further informed Defendants that judgment could be entered against them if no attorney filed a notice of appearance on their behalf.  (*See* Dkts. 38, 43, 54, 56, 69.)  Finally, on September 8, 2014, Judge Broderick signed an Order to Show Cause for Default Judgment against Defendants, as, despite the Court's warnings, Defendants had failed to obtain new counsel.  (Dkt. 87.)  On October 21, 2014, after Defendants failed to attend a hearing on the Order to Show Cause, Judge Broderick ordered that default be entered against Defendants on the issue of liability, and referred the matter to this Court to determine the appropriate amount of damages.  (Dkt. 91.)

On October 28, 2014, this Court issued a Scheduling Order instructing Plaintiff to submit Proposed Findings of Fact and Conclusions of Law with respect to its claimed damages.

---

[1] Plaintiff also initially asserted a claim that it was fraudulently induced to enter into the contract, but the Court (Swain, J.) dismissed the fraud claim.  (*See* Dkt. 57.)

[2] On July 23, 2013 the motion to dismiss was granted in part (*see* n.1, *supra*), and denied in part (Dkt. 57).

(Dkt. 92.) In particular, the Order directed Plaintiff to explain how it arrived at its proposed damages figures, and to provide an affidavit with supporting exhibits containing an explanation of any documentary evidence submitted to help establish the proposed damages. (*Id*.) The Order also afforded Defendants an opportunity either to submit a response to the Proposed Findings or to request an in-court hearing, and cautioned Defendants that, if they failed to respond, this Court would make its recommendation based upon Plaintiff's written submissions alone. (*Id.*)

On December 22, 2014, Plaintiff timely filed its Proposed Findings of Fact and Conclusions of Law (*see* Proposed Findings of Fact and Conclusions of Law, dated Dec. 22, 2014 ("Proposed Findings") (Dkt. 95)), together with a supporting affidavit from its Chief Executive Officer, Louis Hornick, II (*see* Affidavit of Louis Hornick, II, sworn to Aug. 4, 2014 ("Hornick Aff.") (Dkt. 95-1)).[3] The Proposed Findings and the supporting Hornick Affidavit both divided Plaintiff's claimed damages into two categories: (1) "out of pocket loss," which Plaintiff further divided into eight subcategories, and (2) "lost profits." (Proposed Findings ¶¶ 7-8; Hornick Aff. ¶¶ 4-17.) Plaintiff purported to have submitted supporting documentation for each damages claim. (*Id*.)

Upon review of the Proposed Findings, the Hornick Affidavit, and the purported supporting documentation, however, this Court determined that Plaintiff had failed to demonstrate damages to a reasonable certainty, and, by Order dated March 5, 2015 ("March 5 Order"), alerted Plaintiff to the deficiencies in its submissions. (Dkt. 98.) The March 5 Order

---

[3] The Hornick Affidavit, which was sworn to in August 2014, approximately three months before this Court's Scheduling Order was issued, and four months before the Proposed Findings were submitted, was originally submitted to the Court in support of Plaintiff's initial application for a default judgment. (Dkt. 88-2.)

4

noted that this Court could not ascertain how Plaintiff had arrived at its figures for "out of pocket loss," and provided two specific examples of the deficiencies. (*Id.* at 3.) First, the Order explained that Plaintiff's claim for damages in the amount of $18,458 for "drape finished goods," one of the sub-categories under "out of pocket loss," was insufficiently supported by Plaintiff's proffered inventory list (which did not provide prices and appeared to list Plaintiff's entire inventory of drapes as of December 11, 2012) and certain invoices, purchase order reports, and packing records that appeared to be generated by Carolina Finishing of North Carolina, LLC, which is not a party to this action. (*Id.*) Second, the Order noted that Plaintiff's claim for damages in the amount of $3,643.76 for "working loss," another "out of pocket loss" sub-category, was purportedly supported by a table showing "yards" and "working loss" (expressed as a percentage), and a total "cost" of $3,643.76, but that this Court could not determine what the figures in the table represented or how the total cost had been calculated. (*Id.*) Additionally, the March 5 Order explained that this Court could not evaluate Plaintiff's claim for "lost profits" because the exhibits attached to the Proposed Findings in support of Plaintiff's claim were redacted. (*Id.*)

The March 5 Order cautioned Plaintiff that damages are not automatically awarded upon a defendant's default, and that Plaintiff had the burden to demonstrate damages to a reasonable certainty. (*Id.* at 4.) This Court granted Plaintiff a final opportunity to supplement its Proposed Findings with explanations of its proposed damages calculations, and directed Plaintiff to provide the Court with copies of all underlying materials necessary for the Court to be able to understand and duplicate Plaintiff's calculations. (*Id.*) The March 5 Order instructed Plaintiff to provide an affidavit explaining how the total for *each* category and sub-category was calculated, with specific references to the supporting documentation provided, and cautioned that, if this

5

Court continued to be unable to ascertain a reasonable basis for Plaintiff's claimed damages, then it might recommend that no damages be awarded. (*Id*. at 5.) The March 5 Order also provided a deadline for Defendants to submit their responses, if any, to Plaintiff's supplemental submission.[4] (*Id*.)

On March 23, 2015, Plaintiff provided this Court with unredacted versions of the Proposed Findings and Hornick Affidavit which had been previously submitted at Docket 97.[5] Plaintiff, however, failed to provide *any* additional evidence in support of its claim for damages. To date, this Court has received no response, nor any request for a hearing, from any attorney acting on behalf of Defendants.[6] Thus, this Report and Recommendation is based solely on Plaintiff's submissions.

## DISCUSSION

### I.     APPLICABLE LEGAL STANDARDS

#### A.     Damages Following a Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of Court must enter a default against a party who "has failed to plead or otherwise defend" an action.

---

[4] The Docket reflects that the copy of the March 5 Order that this Court mailed to Defendant Darbyco, Inc. was returned as undeliverable. This Court, however, had directed Plaintiff to serve all Defendants with a copy of the March 5 Order (March 5 Order ¶ 1(c)), and this Court assumes that such service was made.

[5] The unredacted documents were provided to Chambers, directly, and were not electronically filed, although this Court has undertaken to file them under seal. (Dkt. 99.) To the extent this Court has considered or relied on the previously redacted information in evaluating Plaintiff's damages claims, this Court will refer to such information herein only in a general manner, so as to avoid revealing potentially sensitive business material.

[6] On January 5, 2015, the Court did receive a letter from Ronald Barts, Principal of Defendant Darbyco, LLC, dated December 21, 2014. (Dkt. 96.) Barts, however, was aware that Defendants, which are business organizations, could not proceed *pro se*, as the Court had reminded him several times that it would not accept any filings from him on behalf of Defendants Darbyco, Inc. or Darbyco, LLC. (*See* Dkts. 38, 43, 54.)

Fed. R. Civ. P. 55(a).  Entry of default is a "judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011), and establishes "an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Although a "default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks and citation omitted), it does not reach the issue of damages, *see Ferri v. Berkowitz*, 561 F. App'x 64, 65 (2d Cir. 2014) (summary order) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 11 (2d Cir. 1997)). A plaintiff must therefore substantiate its claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (internal citation omitted).  A plaintiff bears the burden to "introduce sufficient evidence to establish the amount of damages with reasonable certainty."  *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013).  Although a plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation), if a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been

established through default, *see Lenard v. Design Studio*, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (adopting report and recommendation).

While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Rule 55(b)(2) "allows but does not require . . . a hearing").

### B.     Availability of Lost-Profits Damages

A party seeking lost profits in a breach of contract action must prove that the parties contemplated lost-profit damages when the contract was made. *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000).)  Provided that the threshold requirement is met, "a plaintiff is entitled to recover lost profits only if he can establish both the existence and amount of such damages with reasonable certainty." *Id*.  Where a plaintiff submits "[p]rojections of future profits" based upon on assumptions that require "speculation and conjecture," requisite certainty is not satisfied.  *Lenard*, 889 F. Supp. 2d at 536 (internal citation and quotation omitted); *see also Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, No. 02cv7545 (JCF), 2007 WL 950070, at *7 (S.D.N.Y. Mar. 30, 2007) (calculation of lost profits cannot be ascertained solely by taking past profits and "projecting them into the future").  Rather, the calculation of lost profits must be "capable of measurement based upon known reliable factors without undue speculation." *Schonfeld*, 218 F.3d at 172.

## II.     PLAINTIFF'S CLAIMS

Plaintiff seeks a total of $995,002.92 in damages, which Plaintiff has categorized as either "out of pocket" damages (totaling $87,747.43) or "lost profits" (totaling $907,255.49). (Hornick Aff. at ¶¶ 5, 16-17.)   Plaintiff has further divided the "out of pocket loss" into eight sub-categories: "drape finished goods," "drape piece goods," "fabric," "paper for coating," "bags," "inserts," "storage fees," and "working loss." (*Id*.)  This Court addresses each of these categories in turn.

### A.     Out-of-Pocket Damages

#### 1.     Drape Finished Goods

In the sub-category of "drape finished goods," Plaintiff seeks $18,458.00, which, Plaintiff claims, represents the out-of-pocket costs that it actually incurred when it produced goods for retail that could not be sold due to Defendants' defective performance. (Hornick Aff. ¶ 4(a).)  In support of its claim, Plaintiff relies upon Exhibit D to the Hornick Affidavit, which, Plaintiff asserts, is an inventory of finished goods, and Exhibit E to the Hornick Affidavit, which purportedly contains "invoices for the dyeing of materials." (*Id*.)

Exhibit D consists of a 14-page chart (marked as pages 7 through 21), divided into columns labeled, *inter alia*, "size," "color," "late," "total," and "net pos." (*Id*., Ex. D.)  Plaintiff has not provided any information to help this Court interpret the columns, nor has Plaintiff explained the connection between Exhibit D and the amount of damages it seeks, which is especially baffling as there is no financial information included in the inventory. (*Id*.)  Rather, the chart merely consists of numbers, colors, and initials that do not appear to be linked to the costs of goods produced. (*Id*.)  Exhibit E is similarly unhelpful.  It contains a few invoices, as well as certain purchase orders, packing records, and emails, some of which are duplicates, and

9

most of which involve Carolina Finishing of North Carolina, LLC, which is not a party to this suit. (*Id.*, Ex. E.)  There are three invoices provided in Exhibit E (Invoice Nos. 34562, 34568, and 34266), the sum of which is $1,852.35, a significantly lesser value than the $18,458.00 that Plaintiff seeks for damages in this category.

This Court has already sought clarification from Plaintiff regarding the "drape finished goods" category, specifically detailing the deficiencies in Plaintiff's supporting documentation for this claim.  (*See* March 5 Order.)  Despite this Court's warning that a failure to provide additional information could result in a recommendation to decline awarding damages (*id.*), Plaintiff has still failed to submit any information or explanation that would allow this Court to evaluate Exhibits D and E.  Thus, as Plaintiff has failed to establish damages in this category with reasonable certainty, I recommend that Plaintiff not be awarded damages for "drape finished goods."  *See, e.g., Lenard*, 889 F. Supp. 2d at 538 (awarding no damages where plaintiff "neither provided an adequate basis for the calculation of her contract damages nor provided an explanation . . . of the meager documentary evidence that she has submitted in support of her application for such damages").

### 2. Drape Piece Goods

Plaintiff seeks $2,500.00 for "drape piece goods," which, according to Plaintiff, consist of fabric processed by Defendants that Plaintiff could not finalize into finished products due to Defendants' defective work.  (Hornick Aff. ¶ 4(b).)  Plaintiff has failed to provide any evidence whatsoever in support of its claim for "drape piece goods" damages.  (*Id.*)  Given the complete lack of support for this claim, I recommend that no damages be awarded for this category.  *See, e.g., RGI Brands LLC.*, 2013 WL 1668206, at *7 (stating that the "Court cannot award damages" where plaintiff failed to provide any documentation to support its claim).

### 3. Fabric

Plaintiff next seeks $9,350.00 in damages for fabric that was apparently purchased and sent to Defendants, but never processed. (Hornick Aff. ¶4(c).) In support of its claim, Plaintiff relies on Exhibit F to the Hornick Affidavit, which, Plaintiff asserts, contains "[i]nvoices setting forth the amounts paid by [Plaintiff] for fabric." (*Id.*) There is only one document attached at Exhibit F, however, which is a check from Copland Industries, Inc., to Plaintiff, in the amount of $15,000. (*Id.*, Ex. F.) Plaintiff's description clearly does not match the Exhibit, and Plaintiff has not explained what relation, if any, Copland Industries, Inc. has to this action, or how the submitted check relates to the $9,350 in damages that Plaintiff is seeking for fabric. As Plaintiff has failed to establish its claimed damages in this category, I recommend that Plaintiff not be awarded damages for fabric.

### 4. Paper for Coating

Plaintiff seeks $51,467.83 in damages for "paper for coating," which, apparently, is paper used to dye fabric that would have been sent to Defendants had the breach of contract not occurred. (Hornick Aff. ¶ 4(d).) In support of this claim, Plaintiff relies upon Exhibits G1 through G11, which, Plaintiff alleges, consists of invoices setting forth the amounts paid for the paper. (*Id.*) Exhibits G1 through G11 do indeed contain several invoices (some of which are duplicative) as well as other miscellaneous documents, such as purchase order status reports and overdue balance notices. (*Id.*, Ex. G1-G11.) Although Plaintiff seeks $51,467.83 for the paper, the sum of the non-duplicative invoices included in Exhibits G1 through G11 is $104,737.57.

It appears as though Plaintiff has taken a kitchen-sink approach to providing supporting documentation in this category, submitting voluminous records without an explanation as to which documents correlate to the damages sought. Although it is possible that the invoices

provided by Plaintiff could demonstrate that Plaintiff is entitled to the damages it is seeking (or even more than that amount), this Court cannot make that determination without any clarification of how the documents relate to Plaintiff's claim.  Indeed, it is equally possible that none of the invoices are related to Plaintiff's claim.  In any event, given the clear discrepancy between the damages amount sought by Plaintiff and the total amount of the invoices, this Court does not have a reasonable basis from which to evaluate whether any of the invoices do, in fact, support Plaintiff's claim for damages.  Without any explanation from Plaintiff, this Court cannot conclude that Plaintiff has established damages with reasonable certainty, and, accordingly, I recommend that Plaintiff not be awarded damages for the "paper for coating" category.

### 5. Bags

Plaintiff seeks $583.20 in damages for vinyl bags it purchased for storage of the finished window treatments, which, according to Plaintiff, are now unusable and worthless as a result of Defendants' breach.  (Hornick Aff. ¶ 4(e).)  Plaintiff relies on Exhibit H in support of this claim for damages.  (*Id.*)  This same Exhibit, however, contains documentation that also purportedly supports Plaintiff's claim for damages in the "inserts" category (*see* Section II(A)(6), *infra*), making it difficult to discern which documents correlate with which claim.  (Hornick Aff. Ex. H.)  This Court, though, has identified three invoices that appear to refer to vinyl bags.  Invoice No. 1085287 does not itemize any purchases, but it has a handwritten note that refers to "bag shipment" and a balance due in the amount of $286.00.  (*Id.*)  Invoice Nos. 1084895 and 1083051 contain item descriptions that say "white zip," which could refer to the vinyl bags at issue, and have balances due in the amounts of $2,763.07 and $2,386.09, respectively.  (*Id.*)  In total, the three invoices amount to $5,435.16.  (*Id.*)  Plaintiff has failed to explain the connection between any of these three invoices (or any other invoices included in the exhibit) and the

$583.20 it seeks for damages related to the vinyl bags and, once again, the damages Plaintiff seeks do not match any of the numbers shown in, or obviously derivable from, the documentation provided. Exhibit H also includes miscellaneous packing lists, purchase orders, and receiving reports that might be related to vinyl bags, but do not correlate to the amount of damages Plaintiff seeks. Having no grounds to establish that the damages in this category were claimed with reasonable certainty, I recommend that no damages be awarded for out-of-pocket expenses related to vinyl bags.

      **6.**     **Inserts**

Plaintiff seeks $1,144.64 for damages related to the cost of inserts that Plaintiff apparently intended to use in packaging and identifying the final product. (Hornick Aff. ¶ 4(f).) In support of its claimed damages, Plaintiff relies upon Exhibit H, which, as noted *supra*, is the same exhibit used to support Plaintiff's claim for damages related to bags. In addition to the documents that appear to be related to vinyl bags, Exhibit H contains multiple invoices from the Avery Dennison Corporation. (*Id.*, Ex. H.) Although Plaintiff has not explained its relationship with the Avery Dennison Corporation, this Court has independently determined that the company is "a global manufacturer and distributor of pressure-sensitive adhesive materials." (*See* http://www.averydennison.com/en/home.html.) While these invoices could, therefore, arguably pertain to inserts, the sum of the non-duplicative Avery Dennison invoices is $5,921.24, which is significantly greater than the amount of damages Plaintiff seeks in this category. (Hornick Aff. Ex. H.) Plaintiff, once again, has failed to submit an explanation of which invoices relate to the damages claimed, preventing this Court from determining that the claim for damages has been established with reasonable certainty. Thus, I recommend that no damages be awarded for inserts.

### 7. Storage Fees

Plaintiff seeks $600 for storage fees allegedly charged by Carolina Warp, a non-party to this action, to store the paper used to dye the fabric. (Hornick Aff. ¶ 4(g).) Plaintiff has failed to provide any explanation or documentation whatsoever to show how it calculated its damages in this category. As Plaintiff has failed to satisfy its burden of proving this damages claim, I recommend that Plaintiff not be awarded damages for storage fees.

### 8. Working Loss

Plaintiff seeks $3,643.76 in damages for "working loss," which Plaintiff describes as a loss related to "[t]hose portions of fabric processed by the Defendant that [were] unusable." (Hornick Aff. ¶ 4(h).) In support of this claim, Plaintiff relies upon Exhibit I, which is purportedly a summary of the working-loss amount, and Exhibit E, which purportedly contains information related to the cost of the working-loss fabric. (*Id.*) Exhibit I is a one-page chart that appears to have been made by Plaintiff, containing two columns labeled "yards +/-" and "working loss %." (*Id.*, Ex. I.) At the bottom of the chart there is a total "cost" of $3,643.76. (*Id.*) The chart does not contain any additional financial information or any explanation as to how Plaintiff reached the $3,643.76 figure. (*Id.*) This Court specifically asked Plaintiff for more information about this chart in its March 5 Order, stating that "this Court cannot determine what the figures in the table represent or how the total cost was calculated." (March 5 Order at 3.) Plaintiff has failed to comply with this request for supplemental information, and this Court remains unable to decipher the chart.

Plaintiff additionally relies upon Exhibit E to support its working-loss damages claim, yet Plaintiff offers no explanation regarding the correlation between Exhibit E – which contains invoices from non-party Carolina Finishing of North Carolina, LLC, purportedly related to

dyeing materials in the category "drape finished goods" (*see* Section II(A)(2), *supra*) – and the working loss damages claim. As Plaintiff has not substantiated its claim for damages to reasonable certainty, I recommend that no damages for working loss be awarded to Plaintiff.

### B.     Lost Profits

The bulk of Plaintiff's damages claim is for lost profits. Plaintiff claims that, as a result of Defendants' breach, it lost retail customers and over $900,000 in profits (specifically, $907,255.49) on what had been a successful and established product line. (Hornick Aff. ¶¶ 6-17.) As a threshold matter, to recover lost profits, Plaintiff "must prove that lost profit damages were within the contemplation of the parties when the contract was made." *Schonfeld*, 218 F.3d at 172; *see also Millenium Expressions, Inc.*, 2007 WL 950070, at *7. Plaintiff has made no such showing. Indeed, Plaintiff has not even alleged that lost profits were contemplated by the parties. (*See generally*, Compl.; *see also* Proposed Findings.) For this reason alone, its claim for lost profits should fail.

Further, even if Plaintiff had established that lost profits were contemplated in its contract with Defendants, the evidence provided by Plaintiff would not be sufficient to support its claim for lost-profits damages. Here, Plaintiff relies upon Exhibits J, K, L and M to the Hornick Affidavit, but adequately explains none of them. (*Id*.)

First, Plaintiff contends that Exhibits J and K are detailed sales reports for years 2011 and 2012, respectively, which demonstrate an increase of sales and retailers in 2012. (*Id*. ¶¶ 9-11.) The exhibits themselves are charts that list "invoices" and "credits" from various retail customers, broken down by month. (*Id*., Exs. J, K.) Although the charts do appear to demonstrate sales increases from 2011 to 2012, it is unclear how they support Plaintiff's claim for $907,255.49 in lost profits. It seems as though Plaintiff is trying to establish future lost

profits based upon its past sales.  If this is Plaintiff's intention, then the exhibits are insufficient to support its claim.  *See Millenium Expressions, Inc.*, 2007 WL 950070, at *7 (denying claim for lost profits where plaintiff merely looked to past sales and projected them into the future).  In any event, Plaintiff has not adequately explained how Exhibits J and K are linked to its claim, and, without any such explanation, these exhibits do not demonstrate Plaintiff's claimed lost-profits damages to a reasonable certainty.

Next, Plaintiff contends that Exhibit L is a "spring 2012 direct shipment projected sales of the product" provided by a client of Plaintiff's that is a major retailer,[7] demonstrating that the retailer would have "greatly increased the shipments of the product."  (Hornick Aff. ¶ 13.)  As a preliminary matter, the text contained within Exhibit L is microscopic, preventing this Court from deciphering the exhibit's content.  (*Id.*, Ex. L.)  Regardless, Plaintiff does not provide any specific facts or figures linking the information purportedly contained in Exhibit L to its claim for $907,255.49 in lost profits.  *See Schonfeld*, 218 F.3d at 172 (lost profits damages are not awarded when projections of future profits require "speculation and conjecture").

Finally, Plaintiff contends that Exhibit M, a chart that appears to have been prepared by Plaintiff, supports Plaintiff's claim for lost profits by demonstrating that, based on "already received orders for 2012 and 2013 and the projected orders, [Plaintiff's] gross sales for the period from January 2012 through December 2014 alone would have [yielded a profit of $907,255.49]," if not for Defendants' breach.  (Hornick Aff. ¶ 14.)  Plaintiff fails to explain what calculations it used to predict sales for this time period.  Instead, the chart at Exhibit M merely lists "proforma sales" for years 2013 and 2014, with no indication of how Plaintiff estimated

---

[7] The name of this retailer is redacted from the version of the Hornick Affidavit filed on ECF (*see* Dkt. 95-1), and thus this Court will not reveal its name here (*see* n.5, *supra*).

16

these sales.  As such, the exhibit does not support Plaintiff's claims.  *See RGI Brands LLC,* 2013 WL 1668206, at *8 (submission of data without an explanation of how calculations were derived is insufficient to demonstrate lost profits damages); *see also Millenium Expressions, Inc.*, 2007 WL 950070, at *7 (calculation of lost profits is entirely speculative where the only testimony supporting the lost profits claim was that of plaintiff, without evidence from an economist or expert to support the finding).  At bottom, Plaintiff has not provided *any* reliable evidence in support of its claim for lost profits, and I therefore recommend that this claim, as well as Plaintiff's request for out-of-pocket damages, be denied in their entirety.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Court decline to award Plaintiff any damages as a result of Defendants' default on the breach of contract, breach of warranty, and conversion claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, United States Courthouse, 40 Centre Street, Room 415, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Broderick.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      August 19, 2015

                              Respectfully submitted,

                              DEBRA FREEMAN
                              United States Magistrate Judge

Copies to:

Hon. Vernon S. Broderick, U.S.D.J.

Plaintiff's counsel (via ECF)

Darbyco, Inc.
209 S. Main Street, Space 1310-M
High Point, NC 27260

Darbyco, Inc.
Darbyco, LLC
c/o Mr. Ronald L. Barts
133 James Rd
Unit 2-D
High Point, NC 27265

Home Fabric Furnishing, Inc.
169 Keltner Ave.
Spartanburg, SC 29302

Home Fabric Furnishing, Inc.
c/o David Freeman
3310 Robin Hood Drive
Spartanburg, SC 29302